**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Tara Stripp

     v.                                    Case No. 20-cv-1058-LM

Huggins Hospital, et al.

**REPORT AND RECOMMENDATION**

Plaintiff Tara Stripp, proceeding pro se, has filed a medical negligence action alleging that the defendants — Huggins Hospital, Dr. Scott Orr M.D., and Ellen Dennehy PA-C – misdiagnosed her, causing her severe pain and delaying necessary surgical intervention.  Her complaint (Doc. No. 1) is before the magistrate judge for preliminary review, pursuant to 28 U.S.C. § 1915(e)(2) and LR 4.3(d)(2).  The district judge should dismiss this lawsuit without comment on the merits of Stripp's claims because the court lacks subject matter jurisdiction.

**I.    Preliminary review standard**

The court conducts a review of cases filed by pro se plaintiffs to determine, among other things, whether the court has jurisdiction and whether the complaint states any claim upon which relief may be granted, see 28 U.S.C. § 1915(e)(2); LR 4.3(d)(2).  To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  Additionally, "[t]he party invoking

1

the jurisdiction of a federal court carries the burden of proving its existence." Calderón-Serra v. Wilmington Tr. Co., 715 F.3d 14, 17 (1st Cir. 2013) (quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)).  The court treats as true all well-pled factual allegations and, after disregarding any conclusory allegations, construes all reasonable inferences in plaintiff's favor.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  If the court lacks subject matter jurisdiction over an action, it must dismiss the plaintiff's complaint without addressing the merits of his or her case.  See Acosta-Ramirez v. Banco Popular de P.R., 712 F.3d 14, 18 (1st Cir. 2013).

II.  **Background**

A.  **Initial diagnoses at Huggins Hospital facilities**

On or about August 25, 2018, Tara Stripp, a New Hampshire resident, reported to Huggins Hospital's Emergency Room in Wolfeboro, New Hampshire, "with the chief complaint of back pain radianting (sic) from the back to her rib area, with difficulty breathing."  Compl. (Doc. No. 1) at 4.  Upon arrival, she was seen by Dr. Scott Orr, who ordered two x-ray views of Stripp's chest.  An x-ray technician found that Stripp's thoracic spine showed signs of mild degenerative joint disease.  Medical Records (Doc. No. 1-1) at 1.  After reviewing these findings, Orr issued Stripp "After Care Instructions" stating that her x-

ray showed no evidence of broken bones and that she had strained her thoracic spine.  Id. at 2.  Orr thus instructed Stripp to follow up with her physician as soon as possible if her condition did not improve.  Id.

About four days later, Stripp reported to Ossipee Family Medicine – an outpatient facility associated with Huggins Hospital – to follow up on her back pain with certified physician assistant Ellen Dennehy.  After examining Stripp, Dennehy prescribed an oral steroid, prednisone, as initial treatment.  Compl. (Doc. No. 1) at 4-5.  Two weeks later, she recommended physical therapy, as Stripp's condition had not significantly improved.  Id.; see also Medical Records (Doc. No. 1-1) at 3.

On September 19, 2018, Stripp returned to Huggins Hospital for an MRI of her spine.  The MRI showed a "simple" compression fraction, which appeared "new" when compared to "the plain film exam dated 8/28/2018."  Medical Records (Doc. No. 1-1) at 4-5. On Dennehy's recommendation, Stripp reported to the American Pain Institute – a Huggins Hospital affiliate outpatient facility – one month after the MRI, to be assessed by a physical therapist.  Based on a physical examination and Stripp's continuing reports of back pain, the physical therapist formed a treatment plan consisting of manual therapy, therapeutic exercise, and electric stimulation.  Id. at 6-13.  Her medical

team also recommended that Stripp have a percutaneous vertebral augmentation.  Id. at 14.

B.  **Surgical intervention for discovered abscess**

On or about November 12, 2018, Stripp reported to Portsmouth Regional Hospital for a repeat MRI in preparation for her vertebral augmentation procedure.  Id. at 15.  The MRI radiologist noted "increased destruction from prior and concern for abscess," as well as "osteomyelitis of T6-8 with epidural abscess."  Id. at 16-17.  Portsmouth Hospital then transferred Stripp to Brigham and Women's Hospital in Boston, Massachusetts for a neurosurgical evaluation.  There, Dr. Morgan Chessia Esperance M.D. examined Stripp and discussed operative intervention on the abscess, which Stripp elected for.

On November 19, 2018, surgical staff at Brigham and Women's performed a "bronchoscopy, thoracotomy, Right lower lobe resection, Corpectomy T7-8, and expandable cage placement T7-8" on Stripp to manage her abscess and discitis.  Id. at 17-22. Stripp was induced with general anesthesia and given antibiotics during the procedure.  Id.  Two days later, the surgical team continued their intervention by performing a T4-11 posterior fusion.  Id.

One month later, on December 20, Dr. Ralph James Blair M.D. of Brigham and Women's Hospital examined Stripp as part of a shared visit.  Id. at 23.  During that visit, Blair expressed

general "content" with Stripp's progress, despite the emergence
of a MRSA infection and increased back pain.  Id.  Stripp's
complaint does not address if her condition has changed since
her surgery in 2018.

C.    **Stripp's claims for relief and damages**

Stripp contends that, based on the medical events described
above, Orr, Dennehy, and Huggins Hospital were medically
negligent in their treatment and diagnoses.  Compl. (Doc. No. 1)
at 7.

**For Orr:** Stripp argues that Orr's "treatment did not
demonstrate that of a physicians (sic) common knowledge of
medicine," that "Orr's decisions and practices lead to
[Stripp's] physical injuries," and that Orr's misdiagnosis
caused her "to be in prolonged agony an torture."  Id. at 6.
Stripp further asserts that Orr's decisions and practices
ultimately resulted in her having surgery, "which inflicted
extreme scarring, loss of mobility, and a need for a foreign
object being placed in [her] body."  Id.

**For Dennehy:** Stripp contends that Dennehy made medical
recommendations without a proper diagnosis or second opinion,
thus putting her "through nothing less than extreme torment and
punishment, which ultimately delayed a much needed surgery."
Id. at 7.

**And for Huggins Hospital**: Stripp asserts the Hospital had "an obligation to ensure that each patient would receive the best of a [physician's] care" based off the common knowledge that any physician would have in reaching medical diagnoses. Id. Her complaint suggests that Huggins Hospital may be vicariously liable for the medical negligence of its employees – here, Orr and Dennehy.  Id.

On these allegations, Stripp seeks $5 million in damages for physical injuries, mental anguish, loss of mobility, scarring, loss of internal body parts, foreign objects having to be placed in her body, and wonton infliction of pain and suffering.  Id. at 8.  She asserts in her filings that this court has federal question jurisdiction over these claims. Civil Cover Sheet (Doc. No. 1-2).

## III. Discussion

Unlike state courts, "'[f]ederal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"  Gun v. Minton, 568 U.S. 251, 256 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).  As such, "federal courts have an independent obligation to ensure that they do not exceed the scope of their [subject-matter] jurisdiction" before they address the merits of a case.  See Henderson ex rel. Henderson

v. Shinseki, 562 U.S. 428, 434 (2011); Acosta-Ramirez, 712 F.3d
at 18.

The basic statutory grants of federal-court subject-matter
jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332.
Arbaugh v. Y & H Corp., 546 U.S. 500, 513 (2006). Section 1331
provides for "federal-question" jurisdiction when a plaintiff
pleads "a colorable claim 'arising under' the Constitution or
laws of the United States." Id. Section 1332, in turn,
provides for "diversity of citizenship" jurisdiction when a
plaintiff presents a claim between parties of diverse
citizenship that exceeds the required jurisdictional amount,
currently $ 75,000. See id. (citing § 1332(a)(1), (b)).

Here, Stripp contends that the defendants acted negligently
in their provision of medical treatment, and that the failure to
exercise reasonable care in treating her conditions resulted in,
among other things, severe pain and delayed surgical
intervention. Construed liberally, these allegations appear to
invoke matters of New Hampshire law. See, e.g., Bronson v.
Hitchcock Clinic, 140 N.H. 798 (1996) (discussing the tort of
medical negligence under New Hampshire law); Capecelatro v.
Knapp, 2017 N.H. Super. LEXIS 15, *1 (N.H. Super. Ct. June 17,
2017) (denying motion to dismiss medical negligence claim
against doctor and vicarious liability claim against hospital
brought in New Hampshire Superior Court). These allegation do

not, however, present a claim arising under the Constitution or the laws of the United States, which is required to properly invoke this court's federal question jurisdiction.

Additionally, Stripp's allegations indicate that this court lacks diversity jurisdiction because all named parties are New Hampshire citizens.  "[D]iversity jurisdiction requires 'complete diversity of citizenship as between all plaintiffs and all defendants.' This means that diversity jurisdiction does not exist where any plaintiff is a citizen of the same state as any defendant." Alvarez-Torres v. Ryder Mem'l Hosp., Inc., 582 F.3d 47, 53-54 (1st Cir. 2009) (citations omitted).

Stripp has failed to show how this court has subject matter jurisdiction over what appears to be purely state law claims. Accordingly, the complaint should be dismissed without prejudice or comment as to the merits of Stripp's legal claims.

IV.  **Conclusion**

For the reasons set forth in this Order, the undersigned magistrate judge recommends that the district judge dismiss this case for lack of subject matter jurisdiction.  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion.  Failure to file objections within the specified time waives the right to

appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

**SO ORDERED.**

_____
Andrea K. Johnstone
United States Magistrate Judge

November 9, 2020

cc:  Tara Stripp, pro se